UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

| | |
|---|---|
| The Wackenhut Corporation, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:07cv436 |
| ) | Judge Richard J. Leon |
| SEIU Local 1, ) | |
| Defendant. ) | |
| ) | |

**REPLY MEMORANDUM
IN SUPPORT OF MOTION BY SEIU LOCAL 1
TO QUASH SUMMONS AND DISMISS COMPLAINT**

I. **WACKENHUT HAS FAILED TO COUNTER OUR SHOWING OF LACK OF PERSONAL JURISDICTION OVER LOCAL 1**

Our opening brief and Declaration showed that this Court lacks personal jurisdiction over Local 1 under Section 303 of the Labor Management Relations Act, the federal statute governing this case. See 29 U.S.C. § 187(b) (incorporating by reference the jurisdictional criteria and limitations of 29 U.S.C. §185(c)). Wackenhut effectively concedes that point, for its response in opposition does not even attempt to meet the jurisdictional requirements of federal law.

We further demonstrated that this Court lacks personal jurisdiction under the District of Columbia Code, the only other possible source of "long-arm" jurisdiction over Local 1. Again, Wackenhut's opposition filings do not refute that showing. Instead, they only confirm that none of the relevant long-arm provisions of the District of Columbia Code applies in this case.

A. **Wackenhut Has Not Refuted Our Showing That This Court Lacks "Specific Jurisdiction" Over Local 1 Under Section 13-423 of the D.C. Code**

D.C. Code § 13-423 ("Personal jurisdiction based upon conduct") is one of two long-arm

jurisdictional provisions applicable to unincorporated associations such as Local 1.[1] As Wackenhut acknowledges, Section 13-423(a)(1) and (b) of the Code affords jurisdiction over a non-resident "person" (including an unincorporated association such as Local 1), but only as to a claim "arising from" that person's "transacting any business in the District of Columbia[.]" See Gorman v. Ameritrade Holding Corp., 293 F.3d 506, 509 (D.C. Cir. 2002); Savage v. Bioport, Inc., 460 F. Supp.2d 55, 60 (D.D.C. 2006); Brunson v. Kalil & Co., Inc., 404 F. Supp.2d 221, 228 (D. D.C. 2005) ("In order for this Court to have personal jurisdiction over [Defendant], the actions giving rise to the claim must have occurred in the District"); Atlantigas Corp. v. Nisource, Inc., 290 F. Supp.2d 34, 44 (D. D.C. 2003) ("[P]laintiff's jurisdictional allegations must arise from the same conduct of which it complains," and "[t]he claim itself must have

---

[1] Title 13, Chapter 4, subchapter II of the D.C. Code sets forth the "Bases of Personal Jurisdiction Over Persons Outside the District of Columbia." For purposes of that subchapter, the term "person" is defined as "an individual, his executor, administrator, or other personal representative, or a corporation, partnership, *association*, or any other legal or commercial entity, whether or not a citizen or domiciliary of the District of Columbia and whether or not organized under the laws of the District of Columbia." D.C. Code § 13-421 (emphasis added). Subchapter II furnishes two long-arm statutes applicable to unincorporated associations and other broadly defined "persons" outside the District: Section 13-423, which provides for "specific jurisdiction" as discussed above, and Section 13-422, which affords "general jurisdiction" as discussed below.

A third provision of the Code, Section 13-334, has been construed by the D.C. courts as an additional long-arm statute antedating, surviving and supplementing Section 13-423. As previously noted, however, this supplemental "general jurisdiction" provision applies by its terms only to foreign "corporations" doing business in the District, not to unincorporated associations such as Local 1 or other broadly defined "persons" under Section 13-421. Moreover, and just as critical to this case, Section 13-344 expressly requires that the Plaintiff serve process on the foreign corporation *within the District of Columbia*. As shown below, a plaintiff may not invoke general jurisdiction under Section 13-334 where, as here, the defendant has been served outside the District. See Everett v. Nissan Motor Corp., 628 A.2d 106, 108 (D.C. 1993) ("By serving appellee in California, appellants have failed to comply with the statute's mandate, and are thus foreclosed from benefitting from its jurisdictional protection"). Accord, Gorman v. Ameritrade Holding Corp., 293 F.3d 506, 514 (D.C. Cir. 2002); Kroger v. Legalbill.com LLC, No. 04-2189, 2005 U.S. Dist. LEXIS 42885, at *14-15 (D. D.C. April 7, 2005).

arisen from the business transacted in the District of Columbia or there is no jurisdiction.") (citations omitted).

Wackenhut's submissions confirm that Section 13-423(a)(1) specific jurisdiction is not available here because the Plaintiff's LMRA Section 303 claims do not "arise from" business transactions by Local 1 in the District of Columbia.[2] As noted previously, the Complaint itself does not allege any wrongful acts by Local 1 in Washington, DC. Indeed, Wackenhut does not plead the facts of a single business transaction by Local 1 within the District of Columbia, much less state a claim "arising from" that business transaction in the District. Wackenhut's opposition brief clearly acknowledges those crucial requirements for specific jurisdiction under Section 13-423(a)(1). See Wackenhut Corporation's Memorandum of Points and Authorities in Opposition ("Plaintiff's Opp.") at 8 (citing Atlantigas). Yet the Plaintiff's submissions, despite their volume and wide-ranging scope, do not begin to show a plausible basis for specific jurisdiction under Section 13-423(a)(1). Wackenhut had ample time and opportunity to present affidavits specifying jurisdictional facts – if any existed – that would satisfy the requirements of Section 13-423(a)(1) and (b). But, instead, Wackenhut has furnished only an unsworn, unsubstantiated Statement of Facts describing the *Chicago area* negotiations and contracts underlying its alleged NLRA Section 8(e) claims.[3] Even assuming the truth of every assertion by

---

[2] Although Section 13-423(a) provides for "specific jurisdiction" in six different kinds of cases, with varying jurisdictional reach and prerequisites, Wackenhut does not and cannot argue that this action falls within any of the other categories enumerated in Section 13-423(a)(2)-(6). Accordingly, Section 13-423(a)(1) alone governs the issue of specific jurisdiction.

[3] In contrast, Wackenhut did provide an affidavit addressing the Fed. R. Civ. P. Rule 12(b)(4) and 12(b)(5) issues raised in Local 1's motion to dismiss. Plaintiff's Opp. at 13-14 and Exhibit 7 (Affidavit detailing service of process on Local 1 in Chicago). See Harmatz v. Zenith Radio Corp., 265 A.2d 219, 292 (D.C. 1970) (Noting that despite the opportunity, the plaintiff

counsel in the Statement of Facts (see Plaintiff's Opp. at 1-6), this Court cannot find there the elements required for specific jurisdiction under Section 13-423(a)(1) and (b) of the D.C. Code.

Significantly, the only Washington, D.C. reference in Wackenhut's Statement of Facts is an allegation that Local 1 provides "links" on its website to two other websites purportedly "maintained, managed and operated in the District of Columbia." See Plaintiff's Opp. at 4. That assertion, however, clearly fails to establish a basis for personal jurisdiction under Section 13-423(a)(1) because the Complaint in this case does not allege a "claim for relief . . . arising from" Local 1's linkage to those sites.[4] Further, the courts have ruled that maintaining or "hyperlinking" to such "essentially passive" informational websites does not constitute "doing business" in the District sufficient for general jurisdiction under the D.C. Code's long-arm provisions, discussed below. See Gorman, 293 F.3d at 513 and n.5; GTE New Media Servs. Inc. v. Bell South Corp., 199 F.3d 1343, 1348 (D.C. Cir. 2000); FC Investment Group LC v. IFX Markets Ltd., No. 04-1939, 2007 U.S. Dist. LEXIS 7919, at * 10-14 (D. D.C. February 6, 2007); Atlantigas, 290 F. Supp.2d at 51-52.

---

"chose not to present any evidence in the form of an affidavit . . . on the question of whether Zenith did business in the District," but instead relied on "conclusory allegations").

[4] Moreover, Wackenhut could not make such a claim here in any event, for the Supreme Court has made it clear that NLRA Section 8(b)(4)'s prohibition on certain forms of "coercion" does not and cannot reach peaceful speech and advocacy protected by the First Amendment – whether face-to-face, in writing, in legislative and community forums, or over the Internet – urging businesses or consumers to boycott Wackenhut. See, e.g., Edward J. DeBartolo Corp. v. Florida Gulf Coast Building and Construction Trades Council, 485 U.S 568, 575-578 (1988); NLRB v. Servette, Inc., 377 U.S. 46, 57 (1964); Local 20, Teamsters v. Morton, 377 U.S. 252, 259 (1964); Overstreet v. United Bhd. Of Carpenters, Local 1506, 409 F.3d 1199, 1208-12 (9th Cir. 2005)); Brown & Root, Inc. v. Louisiana State AFL-CIO, 10 F.3d 316, 320 (5th Cir. 1994); Gold v. Mid-Atlantic Reg. Council of Carpenters, 407 F. Supp. 2d 719, 725-26 (D. Md. 2005).

At one other point in its brief, Wackenhut asserts that "a quick [Google] search of the Internet" by Plaintiff's counsel generated "numerous hits" showing that SEIU Local 1's President, Tom Balanoff, came to Washington, D.C. and "transacted business" here on behalf of Local 1. See Plaintiff's Opp. at 12. If those numerous "Google hits" indeed supported its case for personal jurisdiction, Wackenhut presumably would have included them in its Exhibits, or would have at least detailed the nature and extent of Local 1's alleged business transactions in the District. Yet Wackenhut has furnished only a single isolated instance – Mr. Balanoff's scheduled appearance as a panelist, more than three years ago, at an October 30, 2003 public discussion forum sponsored by the Council on Competitiveness, an organization focusing on public policy, legislation and governmental-private sector initiatives. See Plaintiff's Opp. at 12 and Exhibit 6. This incident, again, provides no plausible basis for specific jurisdiction under Section 13-423(a)(1). Even assuming *arguendo* that such a panel appearance by a labor official, disclosing his union affiliation and title or elective office, would constitute the "transaction of business" by Local 1 within the meaning of Section 13-423 – an assumption that we strongly dispute – Wackenhut's claims in this case simply do not "arise from" that alleged transaction in the District.

In summary, the Plaintiff has not met, and cannot meet, its burden of proving the jurisdictional predicate required under Section 13-423(a)(1) and (b) of the D.C. Code. Indeed, faced with Local 1's specific evidence and pertinent legal authority foreclosing specific jurisdiction, Wackenhut has not taken even the minimal steps necessary to raise a material factual dispute under Section 13-423. Wackenhut's opposition papers – particularly its submissions elaborating on the substance and legal theory of its unfair labor practice allegations – only

confirm that the purported claims in this case arise directly from Local 1's contract negotiations and related dealings with building owners, managers and security firms in Chicago and the surrounding Midwestern area, not from "transaction of business" by Local 1 in Washington, D.C. There is simply no tenable argument in this case for specific jurisdiction under D.C. Code § 13-423(a)(1).

      **B.**    **Wackenhut Has Not Refuted Our Showing That This Court Lacks "General Jurisdiction" Over Local 1 Under the District of Columbia Code**

Section 13-422 of the D.C. Code ("Personal jurisdiction based upon enduring relationship") authorizes the courts to exercise long-arm jurisdiction over any "person domiciled in, organized under the laws of, or maintaining his or its principal place of business in, the District of Columbia *as to any claim for relief*." D.C. Code § 13-422 (emphasis added). This provision, like Section 13-423, incorporates the broad statutory definition of "person" discussed above. Thus, by its terms Section 13-422 provides the basis for general jurisdiction over unincorporated associations such as Local 1, provided the statutory criteria are satisfied.

Our submissions establish that Local 1 is not subject to general jurisdiction under Section 13-422, the only applicable Code provision, because Local 1 is not domiciled in Washington, D.C., is not organized under District of Columbia law, and does not maintain its principal place of business in the District. Wackenhut has not rebutted and does not attempt to refute that showing.

Wackenhut cannot salvage its case by claiming general jurisdiction under D.C. Code § 13-334. That provision of Title 13, Chapter 3, which predates the package of modern long-arm provisions grouped in Title 13, Chapter 4 of the Code, has been construed as a supplemental

long-arm vehicle that gives the courts general jurisdiction over certain non-resident business entities when process is served on them within the District. See Atlantigas, 290 F. Supp.2d at 44 n.12 (citing authorities); Ross v. Prod. Dev. Corp., 736 F. Supp. 285, 289-90 (D. D.C. 1989). As noted previously, Local 1 is not subject to jurisdiction under Section 13-334 because that statute, by its express terms, covers only a "foreign corporation doing business in the District of Columbia" that maintains a principal office or address in Washington, D.C. at which its agent may be served. See AMAF Int'l Corp. v. Ralston Purina Co., 428 A.2d 849, 851 (D.C. 1981) (per curiam) (Under Section 13-334, "a foreign corporation [which] is authorized to do business in the District" and "which carries on a consistent pattern of regular business activity within the jurisdiction" is "subject to the general jurisdiction of our courts, upon proper service"). But even if that provision governed parties other than foreign corporations, a proposition we dispute, Section 13-334 would not furnish personal jurisdiction over Local 1 in this action.

  First, as Local 1 showed in its opening brief, the courts have set high legal standards for "doing business" under this particular general jurisdiction provision. Even a substantial amount of purposeful activity in or directed at the District will not suffice. Rather, as Wackenhut acknowledges, general jurisdiction under Section 13-334 requires proof that the foreign corporation's business dealings in the District are both "continuous and systematic." See Gorman, 293 F.3d at 510 and n.2; Savage, 460 F. Supp.2d at 59; Plaintiff's Opp. at 10 ("Jurisdiction under Section 13-334(a) requires that such systematic contacts demonstrate a continuing presence in the forum directed at advancing the entity's objectives"). Local 1 has presented specific evidence, under oath, refuting any such "continuous and systematic" business activity and presence in the District. Wackenhut has not responded with conflicting affidavits

raising a direct and material factual dispute, nor has Wackenhut convincingly shown a likelihood of proving the "continuous and systematic" presence required under Section 13-334.

Second, and of dispositive significance here, Section 13-334 expressly requires that process be served on the defendant *within the District of Columbia*.[5] As the courts have repeatedly confirmed, see n.1 above, compliance with Section 13-334's service requirements is mandatory; a plaintiff is thus "foreclosed" from the benefit of jurisdiction under Section 13-334 where, as here, it has served the defendant outside the District. Everett, 628 A.2d at 108. Accord, Gorman, 293 F.3d at 514; Kroger, 2005 U.S. Dist. LEXIS 42885, at *15; Gowens v. Dyncorp, 132 F. Supp.2d 38, 42 (D. D.C. 2001); EBM Group Corp., Ltd. v. Gulfstream Aerospace Corp., 145 F.R.D. 8, 9-10 (D. D.C. 1992). Because Wackenhut concedes that it served Local 1 only in Chicago, Section 13-334 cannot furnish the basis for jurisdiction over Local 1 in this case, and the Complaint must be dismissed. See Gowens, 132 F. Supp.2d at 42 (Service on defendant in Virginia, rather than in the District as required by Section 13-334, required dismissal for lack of personal jurisdiction even though defendant *"admitted doing*

---

[5] Section 13-334 provides as follows:

(a) In an action against a foreign corporation doing business in the District, process may be served on the agent of the corporation or person conducting its business, or, when he is absent and can not be found, by leaving a copy at the principal place of business in the District, or, where there is no such place of business, by leaving a copy at the place of business or residence of the agent in the District, and that service is effectual to bring the corporation before the court.

(b) When a foreign corporation transacts business in the District without having a place of business or resident agent therein, service upon any officer or agent or employee of the corporation in the District is effectual as to actions growing out of contracts entered into or to be performed, in whole or in part, in the District of Columbia or growing out of any tort committed in the District.

*business in the District*") (emphasis added).[6]

Finally, we address briefly the Plaintiff's misplaced reliance on Day v. Avery, 548 F.2d 1018 (D.C. Cir. 1976). Though Wackenhut criticizes Local 1 for ignoring what it calls a "leading case" (Plaintiff's Opp. at 11), Day is not on point and is irrelevant to our motion to dismiss for lack of personal jurisdiction. Wackenhut apparently misunderstood the issues raised on this motion and confused personal jurisdiction with capacity to be sued – a mistake that Day takes pains to avoid. 548 F.2d at 1023 (explaining that the existence of personal jurisdiction and the legal capacity to be sued are independent). Here, Local 1 has never argued that it lacks capacity to be sued under federal law because it is an unincorporated association. Rather, Local 1 contends that regardless of its legal capacity, this action may not proceed in the District of Columbia unless Wackenhut establishes both personal jurisdiction over Local 1 (under applicable federal or D.C. provisions) and subject matter jurisdiction (under LMRA Section 303) as to Wackenhut's claims. Local 1's status as an unincorporated association bears on the first of those inquiries by dictating which jurisdictional provisions of the D.C. Code do and do not apply. To the extent Day v. Avery has any implicit relevance, it supports Local 1's position by identifying Section 13-421 and the related provisions of Title 13, Chapter 4 as the appropriate long-arm provisions governing *unincorporated* entities such as Local 1.

---

[6] Local 1's submissions also demonstrate that Wackenhut could not possibly fulfill the requirements of Section 13-334 in this case. Because Local 1 does not maintain an office or a registered agent in the District, service cannot be made in the manner prescribed by Section 13-334(a). And under subsection (b), if process were served on a Local 1 officer or employee during their visit to the District, jurisdiction would be effective only as to "actions growing out of contracts entered into or to be performed, in whole or in part, in the District of Columbia or growing out of any tort committed in the District." D.C. Code § 13-334(b).

C.   This Court Should Reject Wackenhut's Request for "Jurisdictional Discovery"

Under the circumstances detailed above, Local 1's motion can and should be decided immediately, on the papers, without subjecting Local 1 to the "intrusive" burden of "jurisdictional discovery." See Savage, 460 F. Supp.2d at 62. Denial of jurisdictional discovery is not an abuse of discretion where, as here, the plaintiff "has provided statements too bare to support an inference of jurisdiction," responded to defendant's affidavit "with speculative or a complete absence of jurisdictional facts," or "fail[ed] to make counter-allegations in its own affidavit." Bancoult v. McNamara, 214 F.R.D. 5, 10 (D. D.C. 2003) (citing Caribbean Broad. Sys. Ltd. v. Cable & Wireless PLC, 148 F.3d 1080, 1089-90 (D.C. Cir. 1998)). Accord, Edmond v. United States Postal Serv. Gen. Counsel, 949 F.2d 415, 425 (D.C. Cir. 1991); Savage, 460 F. Supp.2d at 62-63 (denying jurisdictional discovery where plaintiff "met defendant's affidavit with mere speculation"); Atlantigas, 290 F. Supp.2d at 53 ( Plaintiff's "generalized predictions are not enough to justify jurisdictional discovery").

Most significantly, discovery is inappropriate here because, as we have demonstrated at length, the obstacles to personal jurisdiction in this case do not depend on disputed or disputable issues of fact. Rather, the jurisdictional deficiencies are now ripe for decision as a matter of law. With respect to "general jurisdiction" under Section 13-422 of the Code, Local 1 has already established that it is not an entity "domiciled in, organized under the laws of, or maintaining his or its principal place of business in, the District of Columbia" as required by the statute. D.C. Code § 13-422. Wackenhut does not pretend that any discovery would prove otherwise. As for "general jurisdiction" under the disputed D.C. Code § 13-334, Wackenhut's *admitted service of*

*process on Local 1 in Chicago*, rather than in the District, bars reliance on that supplemental jurisdictional provision as a matter of law. No amount of discovery can remove that dispositive bar. See Gowens, 132 F. Supp.2d at 42.

Limited jurisdictional discovery is equally inappropriate as to "specific jurisdiction" under Section 13-423(a)(1) and (b). As a matter of law, the District of Columbia "transactions" that Wackenhut uses for its jurisdictional predicate must be the transactions giving rise to its claims for relief in this case. Brunson, 404 F. Supp.2d at 228; Atlantigas, 290 F. Supp.2d at 44. Wackenhut has not met and cannot meet that requirement here. As shown in our opening brief, LMRA Section 303 limits Wackenhut's actionable claims to alleged violations of Section 8(b)(4) of the NLRA. In this case, the only relevant allegations would be that Local 1 allegedly engaged in work stoppages, strikes, picketing or similarly "coercive" conduct (as narrowly defined under the NLRA) against Chicago building owners and managers, for the purpose of forcing them to cease doing business with Wackenhut or to enter into an illegal contract provision to be performed in and around the Chicago area. None of that hypothetical conduct – and nothing detailed in Wackenhut's supporting position statements to the NLRB (see Plaintiff's Opp. at 1-6 and Exhibit 4) – constitutes "transacting business" in the District of Columbia. See Brunson, 404 F. Supp.2d at 228-29. Wackenhut has not *plausibly* shown that further inquiry regarding Mr. Balanoff's visits to the District of Columbia would transform its putative NLRA Section 8(b)(4) claims into claims "arising from" Local 1's "transacting business" in the District. See Savage, 460 F. Supp. 2d at 62-63; Atlantigas, 290 F. Supp.2d at 53.[7]

---

[7] Furthermore, if Wackenhut's Exhibit 6 reflects the kinds of District of Columbia contacts and "transactions" that the Plaintiff intends to elicit from interrogation of Mr. Balanoff, Local 1's case for immediate dismissal and denial of requested "jurisdictional discovery" is all

11

II.  **WACKENHUT HAS FAILED TO COUNTER OUR SHOWING OF IMPROPER VENUE AND DEFICIENT PROCESS AND SERVICE**

As we have previously shown, an action under LMRA Section 303 may be maintained only before a court "having jurisdiction of the parties." 29 U.S.C. § 185(a). Because Wackenhut failed to refute our showing that this Court lacks jurisdiction over Local 1, the Complaint should be dismissed under Fed. R. Civ. P. 12(b)(3) for improper venue. Failure to establish jurisdiction over Local 1 under the D.C. Code also means that service on Local 1 was not effective under Fed. R. Civ. P. 4(k)(1)(A), so that the Complaint is also ripe for dismissal under Fed. R. Civ. P. 12(b)(4) and 12(b)(5).

---

the more urgent. As our opening brief shows, and as the Supreme Court and lower federal courts have emphasized, NLRA Section 8(b)(4)'s prohibition on "coercion" cannot be construed to encompass nonviolent, constitutionally protected speech and advocacy, including the kinds of speech and association illustrated in Exhibit 6. See n.4, above. The same is true of the legislative contacts and internet advocacy campaigns illustrated in Wackenhut's Exhibits 1 and 2. Because Wackenhut cannot bring a Section 303 claim "arising from" such activities, discovery of additional such "transactions" and activities by Mr. Balanoff in the District of Columbia could not furnish a basis for personal jurisdiction under D.C. Code § 13-423.

In this regard, Wackenhut's request for "jurisdictional discovery" appears in reality designed to probe more broadly into Mr. Balanoff's and Local 1's legally protected speech, associations and organizing, and to conduct "merits" discovery on the substance of its alleged claims, as well as to circumvent the lack of discovery in NLRB administrative unfair labor practice proceedings. Wackenhut's own brief seems to admit as much, explaining that the Plaintiff seeks Mr. Balanoff's deposition "to explore his contacts and actions on behalf of SEIU Local 1 in the District of Columbia, *particularly as they impact on the corporate campaign against Wackenhut and unfair labor practice charges filed by Wackenhut, including its 8(e) charge, upon which Region 13 has issued complaint which is set for trial on June 11, 2007.*" Plaintiff's Opp. at 12-13 (emphasis added). These are precisely the kind of "generalized predictions" and "conclusory allegations" that do not suffice to justify jurisdictional discovery. Atlantigas, 290 F. Supp.2d at 53. This Court can and should exercise its discretion to foreclose such a fishing expedition.

III.  **WACKENHUT HAS FAILED TO COUNTER OUR SHOWING THAT ITS COMPLAINT MUST BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM**

As we have previously demonstrated, because LMRA Section 303 provides federal subject matter jurisdiction only over claims for violation of Section 8(b)(4) of the National Labor Relations Act, this Court lacks subject matter jurisdiction over Wackenhut's claims for violation of NLRA Section 8(e) and 8(b)(1).[8]  The statutory language of Section 303 is unambiguous, the case law on this point is clear and consistent, and Wackenhut's response does not cite a single decision holding otherwise.  Indeed, Wackenhut's brief virtually ignores the threshold issue of federal subject matter jurisdiction and fails to include even a single reference to Fed. R. Civ. P. 12(b)(1).  Thus, this Court can and should treat Local 1's request for dismissal under Rule 12(b)(1) as conceded.[9]

Skirting the issue of subject matter jurisdiction, Wackenhut's brief addresses at length the substance of NLRA Section 8(e), placing considerable weight on the Supreme Court's decision in Connell Constr. Co. v. Plumbers and Steamfitters Local Union No. 100, 421 U.S. 616 (1975).  But that decision has no bearing here, for Connell was not an action under LMRA Section 303,

---

[8] Count I of Wackenhut's Complaint asserts Plaintiff's claim for relief under NLRA Section 8(e), and Count II includes an asserted claim under NLRA Section 8(b)(1)(A).

[9] To the extent Wackenhut amplifies its Complaint by factual allegations submitted as Exhibits to its opposition brief, those submissions only further confirm that Wackenhut is trying to do precisely what the LMRA forbids – that is, bring a private action in federal district court for violation of NLRA Section 8(e).  In particular, Wackenhut's Exhibit 4 lays out at some length the alleged factual and legal basis for its Section 8(e) claim (alleging that Local 1 and the Chicago Building Owners and Managers Association have negotiated and enforced a contractual provision that violates Section 8(e) on its face and as applied).  Nothing in that material demonstrates any factual predicate for a lawsuit under LMRA Section 303.  The remaining Exhibits are likewise devoid of any support for a Section 303 action.

but, rather, an antitrust action over which the federal district courts clearly do have independent subjection matter jurisdiction. In that context, Section 8(e) issues can and do arise "collaterally," in one of the narrow exceptions to federal labor preemption doctrine. Connell, 421 U.S. at 625 (Although NLRA remedies are ordinarily exclusive, "the federal courts may decide labor law questions that emerge *as collateral issues* in suits brought under *independent federal remedies*, including the antitrust laws." ) (emphasis added). Thus, in Sherman Act cases the courts can entertain and decide the argument that a contract formed "outside" of any collective bargaining relationship and unprotected under Section 8(e) of the NLRA does not qualify for the so-called nonstatutory antitrust exemption, the doctrine that ordinarily shields collective bargaining agreements from challenge as agreements in restraint of trade. Connell, 421 U.S. at 636-635.[10] Likewise, the illegality of a contractual provision under Section 8(e) can be raised by way of defense to a contract enforcement action properly before the federal courts. See Kaiser Steel Corp. v. Mullins, 455 U.S. 72 (1982). Here, by contrast, Section 8(e) does not arise as a "collateral" issue in an action over which the court has independent jurisdiction. Instead, Wackenhut has simply filed an affirmative Section 8(e) claim in federal district court. Neither Connell nor any other authority permits such an action.[11]

---

[10] Connell, therefore, is completely inapposite here, not only because this case does not involve a Sherman Act claim, but also because the relevant contracts in this case were indisputably collective bargaining agreements, entered into in the context of collective bargaining relationships. See Plaintiff's Opp. at 1-6 and Exhibit 4.

[11] Although Wackenhut highlights the *dissent* in Connell for the losing argument "that [LMRA] Section 303 provides the exclusive remedy for violations of 8(e)" (Plaintiff's Opp. at 15), Wackenhut fails to mention that the Connell majority strongly disagreed, described Justice Stewart's legislative history references as "unpersuasive," and emphasized that "[i]n the first place, Congress did not amend 303 expressly to provide a remedy for violations of 8 (e)." Connell, 421 U.S. at 435-36 n.16. Whatever else may be said of the Connell dissent, it is not the

Finally, Wackenhut has not countered our showing that its Complaint states no cognizable claim for violation of NLRA Section 8(b)(4). As demonstrated in our opening brief and above at n.4, the Supreme Court has narrowly limited the kind of conduct that qualifies as prohibited "coercion" under NLRA Section 8(b)(4)(b), and the federal courts have consistently followed that mandate. Even assuming the truth of all of Wackenhut's factual allegations, neither the original Complaint, nor Wackenhut's opposition brief with extensive submissions identifies a single instance of any such "coercive" conduct by Local 1.

The only authority cited by Wackenhut in response to our argument is a Ninth Circuit decision, Associated Gen. Contractors v. NLRB, 514 F.2d 433 (9th Cir. 1975), that predates DeBartolo. That case did not address or involve federal district court subject matter jurisdiction over a private action under LMRA Section 303; instead, it arose on direct review of an NLRB order in the Court of Appeals, pursuant to Section 10 of the NLRA, 29 U.S.C. § 160. Moreover, Wackenhut fails to mention that the union's conduct in that case included a "three and a half day work stoppage." 514 F.2d at 439. To the extent relevant, then, Plaintiff's authority actually supports our position, rather than Wackenhut's, on the kind of "coercion" required for a Section 8(b)(4) claim. Because Wackenhut states no such claim, this action may not proceed under LMRA Section 303.

---

law in antitrust cases or any other context, and it has never been embraced to define subject matter jurisdiction under LMRA Section 303.

CONCLUSION

For all the foregoing reasons, and for the reasons shown in our opening brief and Declaration, specially appearing Defendant Local 1 respectfully requests that this Court enter an order quashing the Summons and dismissing the Complaint in its entirety.

Respectfully submitted,

_____
Kathy L. Krieger, DC Bar No. 385877
James & Hoffman, P.C.
1101 17th Street, NW Suite 510
Washington, DC 20036
(202) 496-0500 Tel
(202) 496-0555 Fax
Email: klkrieger@jamhoff.com


Alexia M. Kulwiec, Esq.
111 E. Wacker Dr., Suite 2500
Chicago, IL 60601
(312) 240-1600 Tel
(312) 233-8848 Fax

Counsel for Defendant SEIU Local 1

Dated: May 7, 2007

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of May, 2007, I caused a copy of the foregoing Reply Memorandum in Support of Motion of Defendant SEIU Local 1 to Quash Summons and Dismiss Complaint to be served by electronic filing, by e-mail, and by first class mail, postage prepaid, upon Plaintiff's counsel of record at the addresses shown below:

Dennis M. Devaney
Strobl, Cunningham & Sharp
300 East Long Lake Rd., Suite 200
Bloomfield Hills, MI 48304-2376

Email: ddevaney@stroblpc.com

_____
Kathy L. Krieger